United States District Court
Southern District of Texas
**ENTERED**
August 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| David Lee Cooper, § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action H-20-1750 |
| § | |
| Bobby Lumpkin, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
| Respondent. § | |

# Report and Recommendation

David Lee Cooper is serving a life sentence for sexual assault of a child younger than seventeen. Cooper filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Bobby Lumpkin moved for summary judgment. (D.E. 16.) Cooper filed a response. (D.E. 20.) The court recommends that Lumpkin's motion for summary judgment be granted and Cooper's petition be denied with prejudice.

## 1. Background

On November 7, 2002, Cooper voluntarily gave a statement to a Houston Police Department officer without counsel present against the advice of his attorney, Tyrone Moncriffe. (D.E. 17-7 at 12; D.E. 17-13 at 54.) At that time, Cooper acknowledged his rights and stated that, on November 1, 2002, he picked up a girl at a bus stop who had flagged him down. (D.E. 17-7 at 12.) Cooper stated that the girl asked if he was a police officer, and, when he said "no," she offered to have sex with him for fifty dollars. *Id.* According to his statement, he told the girl that he would not pay for sex, and, thereafter, they engaged in consensual oral and vaginal sex. *Id.* at 12–13.

According to the complaint, which was filed twelve years after the offense, Cooper offered the girl a ride from the bus stop on

November 2, 2002, and she accepted. (D.E. 17-1 at 7.) Cooper drove her to an apartment complex parking lot where he forced her to perform oral and vaginal sex. *Id.*

In May 2014, a database search identified a match of Cooper's DNA profile to a specimen taken during the victim's sexual assault examination in 2002. *Id.* at 8. On October 15, 2014, a grand jury returned an indictment charging Cooper with "Sexual Assault of a Child Under 17 Years of Age[.]" *Id.* at 15.

### A. Guilty Plea

On October 24, 2016, Cooper appeared before the court with counsel and pleaded guilty to the indicted charge. (D.E. 17-1 at 141–42; D.E. 17-3 at 1–5.) Cooper also pleaded "true" to a prior conviction for robbery and denied that he was forced or threatened to enter the guilty and true pleas. (D.E. 17-3 at 3.) The court informed Cooper that the punishment for the offense was five to ninety-nine years or life in confinement. (D.E. 17-3 at 4; D.E. 17-1 at 142.) The court said, "[Y]ou don't have any kind of agreement and so I know you're probably hoping for probation[,] but you need to realize that you may not get probation. You understand that?" (D.E. 17-3 at 4.) Cooper answered, "Yes, ma'am." *Id.* The court said, "You may actually get life in prison. Do you realize that?" *Id.* Cooper answered, "Yes, ma'am." *Id.* at 5.

The court also confirmed with Cooper that Moncriffe had reviewed the State's evidence and the plea paperwork with Cooper and that he understood what it said and signed it of his own free will. (D.E. 17-3 at 5.) By signing the plea paperwork, Cooper also acknowledged that he was "entering [his] guilty plea freely and voluntarily" and that he had read and understood the admonishments. (D.E. 17-1 at 140–45.)

### B. Punishment Phase

At the sentencing trial, the State presented three witnesses. (D.E. 17-4 at 4, 46; D.E. 17-5 at 6.) The first witness was the victim of the charged offense, who testified about her encounter with Cooper. (D.E. 17-4 at 4, 18–27.) The victim identified Cooper as the man who had assaulted her. *Id.* at 31. Moncriffe cross-examined the victim, highlighting inconsistencies between her testimony and her 2002

2

statement to the police. *Id.* at 32–44. The court sustained several objections to improper impeachment and the admission of evidence concerning the victim's past sexual behavior. *Id.* at 33–35, 38, 43.

The State's second witness described an incident that occurred in 2005 when Cooper approached her at a bus stop, followed her when she declined to accept a ride, grabbed her, and tried to put her in his truck. (D.E. 17-4 at 46, 49–55.) She testified that she escaped from him and contacted the police. *Id.* at 55–56. She testified that Cooper was found guilty at trial of unlawful restraint. *Id.* at 60. Moncriffe cross-examined the witness, questioning her about the details of the identification of her attacker. *Id.* at 64–65.

The State's third witness testified that, in 2011, Cooper had stopped at a bus stop to offer her a ride (D.E. 17-5 at 11–12.) The witness stated that she accepted a ride because he offered to help her with car problems. *Id.* at 12. According to the witness, Cooper took her back to her apartment complex and briefly looked at her car. *Id.* at 13. The witness testified that Cooper gained access to her apartment under false pretenses, slapped her, bit her, threatened her, and raped her. *Id.* at 13–14, 17–19. The witness testified that she escaped and called the police. *Id.* at 21–22. Moncriffe cross-examined the witness, focusing on the actions that she took voluntarily during the encounter with Cooper. *Id.* at 25–26.

Moncriffe called to the stand a woman who had known Cooper for ten years. (D.E. 17-6 at 2, 5.) The woman testified that the accusations against Cooper were inconsistent with her interactions with him. *Id.* at 5–6. The woman explained:

> Mr. Cooper is a family man. He's been there for his family. He would often do cook outs and have his wife call me[,] and I'll come over and interact with the family[,] and also he will give me advice on things with my car. . . . I've just seen a good family man that's always been there for his wife, his son and been helpful to me in the past.

*Id.* at 6–7.

The court then took under consideration the State's motion to consider unadjudicated offenses. (D.E. 17-6 at 10.) In exchange for admitting his guilt and accepting responsibility for those offenses, the

3

State agreed to dismiss them. *Id.* at 10–11. Cooper confirmed that he understood the meaning of his admission of guilt, and the court granted the State's motion. *Id.* at 12. Moncriffe asked that the court consider, when deciding Cooper's sentence, that Cooper accepted full responsibility for his actions. *Id.* at 14–16.

On December 14, 2016, the court sentenced Cooper to life in confinement on the offense of sexual assault of a child younger than seventeen. (D.E. 17-1 at 168; D.E. 17-6 at 24.)

### C. Post-Trial Proceeding

Cooper appealed the trial court's judgment, arguing that "the trial court erred when it did not permit him to elicit testimony from the complainant regarding past sexual conduct." (D.E. 17-13 at 74.) The court of appeals affirmed the trial court's decision on March 13, 2018. *Id.* at 90.

Cooper filed a state petition for a writ of habeas corpus on December 27, 2018. (D.E. 17-13 at 5–22.) Cooper raised two grounds: (1) ineffective assistance of counsel because Moncriffe did not move to suppress the police officer's affidavit containing allegedly false information that supported the complaint and a DNA search; and (2) ineffective assistance of counsel because Moncriffe misled Cooper into believing that Moncriffe could convince the court to mitigate the punishment through cross-examination of the victim (D.E. 17-13 at 10–13, 26–28).

The court ordered Moncriffe to file an affidavit in response to Cooper's allegation of ineffective assistance of counsel. (D.E. 17-13 at 45–46.) In his affidavit, Moncriffe affirmed that he had "explained very carefully the problems we had with this case[,]" "carefully went over details of the trial" and "explained the pros and cons of a jury trial to Mr. Cooper." (D.E. 17-13 at 54.) Moncriffe affirmed that Cooper decided not to go to trial and chose instead to enter a guilty plea and be sentenced by the court. *Id.* Moncriffe attached a form titled "TRIAL PREPARATION LETTER" signed by Cooper that confirmed Moncriffe had explained all plea offers and had discussed all aspects of the trial strategy and the law. *Id.* at 56–57. Moncriffe also attached a letter written and signed by Cooper that stated that Moncriffe's advice "was

4

right because I think[,] had I [gone to] jury trial[,] they prob[ab]ly would have found me guilty. . . . Mr. Moncriff[e] did a great job with the case . . . . I would recomme[n]d [him] to any one[.]" *Id.* at 58.

On November 16, 2019, the Texas Court of Criminal Appeals (TCCA) denied the state habeas petition without a written order. (D.E. 17-8.) Cooper filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on May 14, 2020. (D.E. 1.)

## 2. Legal Standards

### A. Section 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"When, as here, there is no reasoned state-court decision on the merits, the federal court 'must determine what arguments or theories [supported or] . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Beaudreaux*, 138 S. Ct. at 2558). "If such disagreement is possible, then the petitioner's claim must be denied." *Beaudreaux*, 138 S. Ct. at 2558. The Supreme Court has often emphasized that "'this standard is difficult to meet' 'because it was meant to be.'" *Id.* (quoting *Richter*, 562 U.S. at 102); *Mejia*, 906 F.3d at 314 (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

5

### B. *Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia*, 906 F.3d at 315 (quoting *Padilla*, 559 U.S. at 371). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Richter*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (quoting *Richter*, 562 U.S. at 105). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal citations omitted); *Mejia*, 906 F.3d at 315 (quoting *Richter*, 562 U.S. at 105).

#### i. *Deficient Performance*

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Defense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)).

"A court reviewing those choices is required 'not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as [he] did.'" *Mejia*, 906 F.3d at 316 (alternations in original) (quoting *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012)); *see also Guidry v. Lumpkin*, ___ F.4th ___, No. 20-70005, 2021 WL

6

2560733, at *10 (5th Cir. June 23, 2021) (quoting *Strickland*, 466 U.S. at 689 (stating that the petitioner must present sufficient evidence to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy")). The Fifth Circuit Court of Appeals has "explained that counsel is afforded particular leeway where a potential strategy carries 'double-edged' consequences." *Mejia*, 906 F.3d at 316.

"Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Richter*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317 (quoting *Richter*, 562 U.S. at 105). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 689).

"'The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation,' but 'to ensure that criminal defendants receive a fair trial.'" *Guidry*, 2021 WL 2560733, at *10 (quoting *Strickland*, 466 U.S. at 689). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 688).

    ii. *Prejudice*

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect on the outcome[.]" *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. That is, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly

7

supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

### C. *Voluntariness of Guilty Plea*

A criminal defendant must have a full understanding of the risks involved so that he may "make an intelligent choice of whether to accept a plea or take his chances in court." *Anaya v. Lumpkin*, 976 F.3d 545, 552 (5th Cir. 2020) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)). "The critical issue in determining whether a plea was voluntary and intelligent is 'whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect.'" *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (quoting *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991)). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982).

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla*, 559 U.S. at 364 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 687 (quoting *McMann*, 397 U.S. at 770–71). To prevail on the prejudice prong in the context of a guilty plea, the petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations [because] . . . [t]he stakes for defendants are high[] and many elect to limit risk by forgoing the right to assert their innocence." *Premo v. Moore*, 562 U.S. 115, 129 (2011).

8

*3. Analysis*

Cooper raises ineffective assistance of trial counsel as grounds for relief, arguing that Moncriffe: (1) failed to properly investigate whether the police used false information in the affidavit supporting the arrest; (2) failed "to file a motion to suppress illegal arrest" and an unspecified search;[1] and (3) failed to review plea offers and intelligently advise Cooper. (D.E. 1 at 6.)

The TCCA denied habeas relief without a written order.[2] As a result, this court does not know what legal or factual analysis the TCCA employed to reach its conclusion. Under those circumstances, this court "must determine what arguments or theories [supported or] . . . could have supported the state court's decision" and "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" Supreme Court precedent. *Beaudreaux*, 138 S. Ct. at 2558 (quoting *Richter*, 562 U.S. at 102). The TCCA must have concluded that Moncriffe's representation of Cooper was constitutionally adequate. The question for this court then is whether that conclusion was objectively unreasonable or a misapplication of federal law. *See Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021) (quoting 28 U.S.C. § 2254(d); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010)). It was not.

*A. Failure to Investigate*

In his federal petition, Cooper asserts that Moncriffe did not investigate whether the information in the affidavit supporting his arrest was true. (D.E. 1 at 6.) In his response to Lumpkin's motion for

---

[1] Based on the more thoroughly briefed claims raised in the state habeas court, Cooper appears to be arguing that Moncriffe should have moved to suppress the arrest and DNA test because they were based on an affidavit allegedly containing false information.

[2] "Under Texas law[,] a denial of relief by the [TCCA] serves as a denial of relief on the merits of the claim." *Craaybeek v. Lumpkin*, No. 19-10173, 2021 WL 2492762, at *3 (5th Cir. June 17, 2021) (quoting *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000)); *see also Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.")

summary judgment, Cooper argues that Moncriffe did not investigate inconsistencies in the victim's statements to the police, specifically her claim at the initial interview that she was an adult. (D.E. 20 at 8.) Cooper argues that, had Moncriffe investigated, he "would have learned that the police used those false statements in an affidavit to secure an arrest warrant and search warrant." *Id.* at 13.

The state habeas court could reasonably have found that Moncriffe's conduct fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Cooper fails to point to any false information in any affidavit filed in the case. The affidavit supporting the complaint established that the victim was sixteen years old at the time of the offense and that she had been "using a false name and [date of birth] because she was afraid someone would find her and send her back to the foster home." (D.E. 17-1 at 7.) Because the complaint was based on the victim's actual age, the information was not false. Cooper does not say what further investigation Moncriffe should have undertaken or what it may have uncovered.

Moreover, according to Moncriffe's affidavit, which the TCCA appears to have credited, he advised Cooper not to attend an interview with police without counsel and advised Cooper to allow Moncriffe an opportunity to investigate the allegations before making a statement. Cooper disregarded Moncriffe's advice and voluntarily provided a statement to the police in which Cooper admitted having sex with the victim.[3] (D.E. 17-7 at 12–13.) The facts to which he admitted made their way into the police officer's affidavit in support of the complaint. Cooper does not say what Moncriffe was supposed to find in an investigation to rebut the facts Cooper admitted to the police.

Finally, the record demonstrated that Moncriffe thoroughly explored the victim's false statements during the sentencing hearing. (D.E. 17-4 at 32–44.) Moncriffe cross-examined the victim at the

---

[3] In an acceptance of responsibility letter, Cooper also admitted that he "entered into a sex for hire [sic] with the complaining witness, not knowing that she was a minor." (D.E. 17-13 at 59.)

sentencing trial on the inconsistencies in her statement. *Id.* His cross-examination focused on whether the victim had lied about prostituting on the night of the offense as well as about her age. *Id.* Cooper fails to demonstrate any deficient performance by Moncriffe. *See Strickland*, 466 U.S. at 697 (stating that the petitioner's claim fails if he does not make a sufficient showing on both prongs of an ineffective assistance claim).

The state habeas court also could have found that Cooper failed to demonstrate that Moncriffe's alleged failure to investigate prejudiced him. As discussed, in the present context, Cooper must show that he would have gone to trial but for counsel's errors. *See Hill*, 474 U.S. at 59. Cooper does not point to any fact or evidence, which, if uncovered before his guilty plea, would have changed his decision to plead guilty. The evidence against him was strong and included DNA, a confession, and the victim's testimony. (D.E. 17-1 at 7–8; D.E. 17-7 at 12–13; D.E. 17-13 at 55.) Inconsistencies in the victim's statements were known to Cooper before he pleaded guilty. The strategy was to mitigate the sentence. The TCCA could have concluded that Cooper failed to point to any information that would have altered his calculus.

The TCCA's denial of this claim was neither contrary to clearly established federal precedent or an unreasonable determination of the facts based on the evidence before the state habeas court. *See* 28 U.S.C. § 2254.

### B. Failure to File a Motion to Suppress

Cooper claims that Moncriffe "was ineffective for failing to file a motion to suppress illegal arrest and search." (D.E. 1 at 6.) In his federal habeas petition, Cooper does not explain why his arrest was unlawful or what evidence should have been suppressed.

The state habeas court could reasonably have found that Moncriffe's decision not to file any motion to suppress was reasonable under the circumstances. Cooper points to nothing in the record that suggests there was anything illegal about his arrest. Cooper also fails to identify any fact or evidence that could have or would have been suppressed had Moncriffe filed a motion.

To the extent that Cooper is referring to suppression of his voluntary statement to the police, the TCCA reasonably could have credited Moncriffe's affidavit, which affirmed that he found "no legal reason for the suppression of [Cooper's] statement[.]" (D.E. 17-13 at 55.) As discussed, Cooper provided the statement voluntarily and against advice of counsel. Cooper does not provide any basis for the court to conclude that the confession should be suppressed. The TCCA reasonably could have found that moving to suppress Cooper's statement would have been futile. Defense counsel is not required to file futile motions. *Garcia v. Stephens*, 793 F.3d 513, 525 (5th Cir. 2015) (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

The TCCA's denial of this claim was neither contrary to clearly established federal precedent or an unreasonable determination of the facts based on the evidence before the state habeas court. *See* 28 U.S.C. § 2254.

### C. Failure to Review Plea Offers and Intelligently Advise

In his federal petition, Cooper asserts that Moncriffe gave Cooper "erroneous misleading advice." (D.E. 1 at 6.) He asserts that his plea was not entered "voluntarily, knowingly, and intelligently" because Moncriffe failed to review plea offers with Cooper and failed to advise Cooper as to the State's evidence. *Id.* In his response to Lumpkin's motion for summary judgment, Cooper attaches a case reset form dated April 17, 2015, that states a plea offer of thirty-five years of confinement was extended to Cooper. (D.E. 20 at 19.)

Cooper fails to demonstrate that Moncriffe failed to communicate plea offers to Cooper or to provide him with accurate advice. To the contrary, Cooper acknowledges in his briefing that Moncriffe advised Cooper that it would be better to plead guilty and go before the judge for sentencing. (D.E. 20 at 9.) Cooper further expresses his understanding of the trial strategy, stating that the plan was that "Moncriffe would prove that the alleged victim had in fact lied about the age as a consenting adult[] and was consenting to sexual activity through prostitution for hire[] and that Cooper would receive a lighter sentence." *Id.* In a signed statement written on the day he

entered the plea, Cooper further affirmed that he agreed with the advice to plead guilty. (D.E. 17-13 at 58.)

The record reflects that Moncriffe explained all offers made by the State and that he and Cooper had "carefully gone over all aspects of [their] trial strategy and the law as it relates to [their] defenses." (D.E. 17-13 at 56.) Cooper acknowledged that these discussions occurred. *Id.* at 55–56. Cooper provides no evidence to overcome the presumption that Moncriffe's actions were sound trial strategy. *See Guidry*, 2021 WL 2560733, at *10. Because Moncriffe's strategy was based on knowledge of relevant law and facts, Cooper cannot attack it now simply because he received a longer sentence than he previously had been offered. *Cf. Rhoades*, 852 F.3d at 434 (stating that strategic choices reached after thorough investigation of law and facts are "virtually unchallengeable").

Moreover, the TCCA reasonably could have found that Cooper understood the consequences of his guilty plea because the trial court explained them to him, including the maximum possible prison term of life in prison, and asked whether he understood. (D.E. 17-3 at 4–5); *cf. Barbee*, 678 F.2d at 635 (stating that, in order to understand the consequences of a guilty plea, "the defendant must know the maximum prison term and fine for the offense charged").

Cooper also fails to show that Moncriffe's performance prejudiced him. Cooper argues only that the result would have been different. (D.E. 20 at 14–15.) This conclusory statement is post-sentencing hindsight that is not based on facts in the record. *Cf. Strickland*, 466 U.S. at 689 (instructing courts to the "distorting effects of hindsight"). Cooper does not point to any contemporaneous facts or circumstances showing a "reasonable probability" that he would have accepted a thirty-five-year sentence instead of pleading guilty and proceeding to a sentencing trial. *See Hill*, 474 U.S. at 59.

This court finds that the TCCA's decision, which may have been supported by any of the above legal arguments or theories, was not "contrary to" or "an unreasonable application of[] clearly established Federal law" as determined by the Supreme Court. 28 U.S.C. § 2254(d). Because the TCCA's denial of these claims was reasonable, Cooper is not entitled to federal habeas relief.

13

*4. Conclusion*

The court recommends that Lumpkin's motion for summary judgment be granted and Cooper's petition be denied with prejudice. Cooper has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Cooper has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, this court recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on Aug. 2, 2021.

                                              Peter Bray
                                United States Magistrate Judge